Gayle M. Blatt, SBN 122048
gmb@cglaw.com
CASEY GERRY SCHENK
FRANCAVILLA BLATT & & PENFIELD, LLP
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie N. Appel, SBN 187483
mappel@forthepeople.com
Jean Martin (pro hac vice pending)
jmartin@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE BARE and MICHAEL NICKEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUBARU OF AMERICA, INC.<br><br>Defendant. | NO.: <u>'20 CV1743 GPC MDD</u><br><br>CLASS ACTION<br><br>COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs Suzanne Bare and Michael Nickel bring this class action against Subaru of America, Inc. on behalf of themselves and all others similarly situated in the state of California, and allege:

CLASS ACTION COMPLAINT

1

# INTRODUCTION

***Sudden acceleration is one of the [deadliest] . . . automotive defects in history. It occurs when a car's electronics cause the throttle to go wide open, making it impossible for the driver to return the car to idle if it remains in gear. It also severely limits the ability of the brakes to bring the vehicle under control – leaving the unsuspecting driver at the mercy of a runaway car. Thousands of people, including drivers, passengers, and innocent bystanders, have been killed or seriously injured in sudden acceleration accidents.[1]***

1.    Subaru manufactures, markets, distributes and sells a range of vehicles which, upon information and belief, suffer from a defect that results in a non-driver initiated sudden acceleration event wherein the vehicle spontaneously lunges forward, placing the driver, passengers, other drivers and pedestrians at risk of grievous harm.

2.    Subaru vehicles affected by this defect include the 2015-2019 Subaru Legacy, 2012-2018 Subaru Forester, and 2015-2019 Subaru Outback ("Class Vehicles").

3.    Upon information and belief, the underlying defect affecting Class Vehicles and causing Sudden Unintended Acceleration ("SUA") events is twofold. First, the Controller Area Network ("CAN bus"), a staple of all Class Vehicles, contains a software and/or software communication protocol flaw.[2]

---

[1] Sudden Acceleration Information Group, available at https://suddenacceleration.com (last visited June 6, 2020).

[2] A Controller Area Network ("CAN bus") is serial network technology developed for the automotive industry to enable microcontrollers and devices to communicate with each other's applications without a host computer. It is a message-based protocol system, designed originally for multiplex electrical wiring within automobiles. For each device the data in a frame is transmitted sequentially but in such a way that if more than one device transmits at the same

---

CLASS ACTION COMPLAINT

Second, the Subaru Brake Override System ("BOS") is faulty and does not work as intended.  The BOS was added to Class Vehicles to address and prevent SUA events from occurring. By monitoring both the engine's electronic accelerator and operation of the vehicle's brakes, the BOS compares data from both systems to determine whether they are being deployed simultaneously. When working, the BOS is supposed to close the throttle plate to reduce engine speed and simultaneously raise the pressure of the brake fluid high enough to stop the vehicle ("Defect").

4.      While Class Vehicles should have been designed free of defects that could result in SUA events, the BOS failsafe system should also operate effectively to mitigate the effects of SUA events when they do occur.

5.      Hundreds of consumers have lodged complaints with the National Highway Traffic Safety Administration and on consumer websites complaining of SUA events affecting their vehicles. Moreover, many of these drivers who attempted to mitigate the effects of sudden acceleration by depressing the brakes reported that doing so had no effect.

6.      Despite the significant number of complaints, Subaru has neither offered a recall nor issued a Technical Service Bulletin to address the underlying Defect. Rather, it has ignored this growing and dangerous problem, routinely dismissing complaints and ascribing the SUA to driver error.

7.      Plaintiffs, on behalf of all others similarly situated, allege claims for breach of express warranty, breach of implied warranty, unjust enrichment, violation of California's Consumer Legal Remedies Act and its Unfair Competition Law.

---

time the highest priority device is able to continue while the others back off. Frames are received by all devices, including by the transmitting device.

CLASS ACTION COMPLAINT

**PARTIES**

8.      Plaintiff Suzanne Bare is a California resident.

9.      Plaintiff Bare purchased a certified pre-owned 2016 Subaru Legacy in July 2019 from DCH Subaru of Riverside. She also purchased an Extended Warranty from Subaru that provided comprehensive warranty coverage up to 84 months and 100,000 miles.

10.     On January 19, 2020, Ms. Bare was driving her Subaru vehicle. There were about 33,000 miles on the vehicle at the time. She was stopped, with her foot on the brake. As she attempted to put the vehicle into park, she suffered an SUA event. Despite applying her foot forcefully to the brake, the vehicle shot forward, hitting a fence, damaging both the fence and the vehicle.

11.     Ms. Bare's vehicle suffered in excess of $1,600 in damages. Ms. Bare submitted the matter to her insurer which covered the claim except for a $500.00 deductible which was borne by Ms. Bare.

12.     On January 20, 2020, Ms. Bare brought her vehicle to Subaru of San Bernardino ("SSB"), a licensed Subaru dealership, for diagnosis and to substantively address the Defect. A day later, SSB returned the vehicle stating only that it was "operating as designed."[3]

13.     Ms. Bare no longer feels the car is safe to drive, and now only does so very reluctantly.

14.     Ms. Bare purchased her vehicle primarily for personal use. The safety of the vehicle was a material factor in her decision to purchase it.

15.     Ms. Bare reasonably believed that the vehicle was defect free, safe and reliable. Had Ms. Bare known that the vehicle was subject to sporadic and random SUA events, she would not have purchased the vehicle or would have paid substantially less.

---

[3] Exhibit A Bare packet No 1. pp. 26-29.

CLASS ACTION COMPLAINT

4

16.    Plaintiff Michael Nickel is a San Diego, California resident.

17.    He purchased a used 2014 Subaru Forrester Limited 2.5 from a private party in or around November 2019.

18.    Since taking ownership of the vehicle, Mr. Nickel has suffered several SUA events. Typically, while stopped with his foot on the brake, the car will suddenly go into gear and lunge forward for a couple of seconds. Thus far, Mr. Nickel has been successful in timely applying the brakes until the SUA event subsides and the car returns to normal. Although he has not suffered an accident resulting from a SUA event, he remains concerned that the car is unsafe.

19.    Subaru of America, Inc. ("SOA") is a New Jersey corporation headquartered in Camden, New Jersey.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. section 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.  Plaintiffs are informed and believe that there are thousands of Class Members with different citizenship from Defendant.

21.    Through its business operations in this District, Defendant intentionally availed itself of the forum so as to render the exercise of jurisdiction by this Court just and proper.

22.    Venue is proper in this Court pursuant to 28 U.S.C. section 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred here.

## STATEMENT OF FACTS

### A.    *Sudden Unintended Acceleration and Throttle Defect*

23.    Sudden unintended acceleration is the unintended, unexpected, uncontrolled acceleration of a vehicle, often accompanied by an apparent loss of

braking effectiveness.  It is typically caused by a failure of the electronic throttle control that results in a signal causing the throttle to expand wide open. A vehicle will suddenly accelerate as if the gas pedal were completely depressed, making it difficult for the driver to return the car to idle if it remains in gear. It also severely limits the ability of the brakes to bring the vehicle under control – leaving the driver at the mercy of a fast running uncontrollable car.

24.     Modern vehicles use an electronic throttle "fly by wire" system for accelerator (throttle) control that does away with the actual physical connection between driver and engine (previously by cable or linkage). This system typically consists of: electronic control module ("ECM"); electronic throttle control; throttle body; throttle position sensor ("TPS"); actuator; accelerator pedal position sensor (APS); and electronic throttle control relay.

25.     The throttle body contains the actuator, throttle plate, and TPS which are integrated into a single housing. The actuator consists of a DC motor with a 2-stage gear. The TPS provides throttle plate angle feedback to the PCM ("ECM" in Subaru vehicles).

26.     The electronic throttle control system should provide forced idle under any one of the following scenarios: faulty accelerator position sensor ("APS"); faulty APS and brake; faulty APS and vehicle speed sensor; faulty APS and vehicle speed sensor and brake; faulty electronic throttle control ("ETC"); and faulty powertrain control module ("PCM").

27.     Plaintiffs are informed and believe that  the Controller Area Network ("CAN bus") in Class Vehicles contains a software and/or software communication protocol flaw that prevents the electronic throttle control system from operating properly.  Second, the Subaru Brake Override System ("BOS") is faulty and does not work as intended.  The BOS was added to Class Vehicles to address and prevent SUA events from occurring. By monitoring both the engine's

electronic accelerator and operation of the vehicle's brakes, the BOS compares data from both systems to determine whether they are being deployed simultaneously. If so, the BOS is supposed to close the throttle plate to reduce engine speed and simultaneously raise the pressure of the brake fluid high enough to stop the vehicle.

28.    Sudden unintended acceleration in Class Vehicles can happen anytime there is a disturbance in the electrical current within the throttle body and often occurs when the vehicle is in motion (e.g. shifting gears, engaging/disengaging the cruise control, applying brakes, etc.)

29.    Because sudden acceleration is caused by an electronic defect, it leaves a much less visible trace, giving automakers such as Subaru the opportunity to blame such events on drivers and deflect from the underlying safety defect.

30.    Experts have long warned that auto manufacturers lag behind those in other industries whose products rely on electronic systems in understanding the myriad ways their microprocessors and electronics components can fail.  When such defects do appear, they should be promptly addressed, rather than reflexively diverting blame to the driver.[4]

### B.    Consumer Complaints

31.    In addition to the specific events suffered by Plaintiffs, numerous consumers have complained about sudden acceleration events in Subaru vehicles for years, to the point that hundreds of such complaints have been lodged about Class Vehicles with the National Highway Traffic Safety Administration ("NHTSA") and various consumer websites. These complaints encompass all

---

[4] Nash, C et, al, *Sudden Acceleration - The Myth of Driver Error* (2003), ISBN 0-9707174-5-8, CALCE EPSC Press University of Maryland College Park, MD 20742.

CLASS ACTION COMPLAINT

makes and model years of Class Vehicles. By way of example, as reported on www.carproblemzoon.com:[5]

**Car Accelerates On Its Own problem of the 2017 Subaru Outback**
**Failure Date: 08/19/2019**

Yesterday morning, I stopped my Subaru in order to back into a parking space. The car was in drive and my foot was on the brake. While my foot was still on the brake and I was changing gears from drive to reverse, the engine started accelerating full-throttle. I had to press the brake pedal very hard to prevent the car from going down the hillside behind the parking lot. I put the car back in park with the engine revving full-throttle and turned the ignition off. After this incident the car operated normally until today. Today, my car was parked in my driveway in front of my garage. When I started the car everything seemed fine until, with my foot on the brake, I attempted to change gears from park to drive. Again the engine immediately and unexpectedly accelerated full-throttle. As I was moving the gear shifter from park to reverse to neutral to drive, I again had to press the brake pedal very hard to prevent the car from backing into my garage door.

**Car Accelerates On Its Own problem of the 2019 Subaru Outback**
**Failure Date: 08/18/2019**

The contact owns a 2019 Subaru Outback. While the contact was exiting a car wash, the vehicle suddenly accelerated and drove over a curb. The front driver's side wheel was flattened and the vehicle stopped after the contact turned to avoid crashing into a wall. …... The failure mileage was 4,300.

**Car Accelerates On Its Own problem of the 2019 Subaru Outback**
**Failure Date: 08/13/2019**

---

[5] https://www.carproblemzoo.com/subaru/outback/car-accelerates-on-its-own-problems.php (last visited June 6, 2020).

CLASS ACTION COMPLAINT

Slowly pulling straight into parking spot at grocery store. Applied brake when car suddenly accelerated. I was able to control steering, but brakes would not work. Steered car into empty parking spot in front of me then turned hard right to avoid hitting parked cars in row across. Subaru hit a pick up truck that was reversing out of a diagonal parking spot. The car didn't stop upon impact, instead both right side wheels climbed up the side of truck at an angle. Air bags didn't deploy on impact. This was a very dangerous situation. The acceleration was uncontrollable and I am afraid to drive the car.

**Car Accelerates On Its Own problem of the 2016 Subaru Outback**
**Failure Date: 12/30/2017**

Sudden acceleration: this serious unsafe condition relates to my 2016 Outback limited 2. 5l purchased on 2/29/2016 in Tampa[,] Florida. The exact same unsafe condition has happened twice; first in October 2016 at approximately 8800 miles, and second in December 2017 at approximately 24,000 miles. Description of incident: while slowly pulling into a parking space and gently applying the brake, the car's engine rpm accelerated and I had to break hard in order to stop the car. I moved the transmission to park, but the engine continued at high rpm so I moved the transmission to reverse, then to neutral, then I turned off the car off since the engine was still at a high rpm. A notice appeared in my odometer area to put the car in park, which I did. I then restarted it and everything was back to normal again. Note: I did not simultaneously push the break [sic] and the accelerator together which could possibly cause this situation. I am fortunate nothing was in front of me either time. I hope no one has been injured, but it is likely property damage has resulted….

32.     NHTSA also provides consumers an opportunity to file a complaint regarding vehicle safety.[6] A search of a single model year of Class Vehicles

---

[6] https://www.odi.nhtsa.dot.gov/VehicleComplaint/#:~:text=If%20you%20need%20assistance%20with,800%2D424%2D9153).

CLASS ACTION COMPLAINT

9

reveals several complaints detailing the exact same issue.[7]

**NHTSA ID Number: 11110715**
**Incident Date July 5, 2018**
**Consumer Location GROVELAND, CA**
**Vehicle Identification Number 4S3BNAL61G3****

THE CONTACT OWNS A 2016 SUBARU LEGACY. WHILE
REVERSING THE VEHICLE, IT SUDDENLY
ACCELERATED. THE CONTACT DEPRESSED THE
BRAKE PEDAL, BUT THE VEHICLE FAILED TO STOP. AS
A RESULT, THE VEHICLE DROVE THROUGH THE
DRIVEWAY BARRIERS AND CRASHED INTO A TREE.
THERE WERE NO INJURIES. THE VEHICLE WAS TOWED
TO AN INDEPENDENT MECHANIC WHO REPAIRED THE
REAR DRIVER SIDE PANEL AND TRUNK. THE CONTACT
HAD NOT CALLED THE DEALER. THE MANUFACTURER
WAS NOTIFIED AND ADVISED THE CONTACT THAT
THEY WOULD TOW THE VEHICLE TO A SUBARU
DEALER FOR DIAGNOSTIC TESTING. THE FAILURE
MILEAGE WAS 37,000.

**NHTSA ID Number: 10956391**
**Incident Date February 20, 2017**
**Consumer Location WHITTIER, CA**
**Vehicle Identification Number 4S3BNAF65G3****

AFTER STARTING THE ENGINE, WHEN PULLING OUT
FROM MY DRIVEWAY AND PUT THE GEAR IN REVERSE
TO PULL OUT, THE VEHICLE ACCELERATES ON ITS
OWN WITHOUT MY FOOT PRESSING THE
ACCELERATOR. SO BRAKE HAS TO BE APPLIED
IMMEDIATELY TO SLOW DOWN THE VEHICLE. IT
SHOOTS FORWARD WITH OUT ME ACCELERATING. IT
ACCELERATES AT ABOUT 25-30 MILES PER HOUR
WITHOUT ME ONCE AGAIN ACCELERATING IT SO WE
HAD TO BRAKE ALL THE WAY FROM THE HOUSE TO
THE PLACE OF WORK. WE HAVE HAD SEVERAL NEW
CARS INCLUDING SUBARU BENZ AND NEVER HAVE

---

[7] See, NHTSA complaints for the 2016 Subaru Legacy, available at
https://www.nhtsa.gov/vehicle/2016/SUBARU/LEGACY/4%252520DR/AWD

HAD THIS PROBLEM. AS I GO ON THE STREET THE VEHICLE CONTINUES TO ACCELERATE WITHOUT ME ACCELERATING IT. THERE IS ALSO A BURNING SMELL WHEN THE CAR IS STARTED.  WE TOOK THE VEHICLE INTO THE DEALER AND THEY WERE NO HELP AT ALL.

**NHTSA ID Number: 10986373**
**Incident Date April 18, 2017**
**Consumer Location NORTH ANDOVER, MA**
**Vehicle Identification Number 4S3BNAN6XH3****

THE CONTACT OWNS A 2017 SUBARU LEGACY. WHILE PARKING THE VEHICLE, THE CONTACT RELEASED HER FOOT FROM THE ACCELERATOR PEDAL AND THE VEHICLE EXPERIENCED UNINTENDED ACCELERATION. THE FAILURE OCCURRED WITHOUT WARNING. AS A RESULT, THE VEHICLE ACCELERATED UP A HILL AND CRASHED INTO A WALL. THE VEHICLE WAS TOWED TO THE DEALER, BUT THE FAILURE COULD NOT BE REPLICATED. THE VEHICLE WAS REPAIRED. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 300.

**NHTSA ID Number: 11245002**
**Incident Date August 19, 2019**
**Consumer Location BEAVER FALLS, PA**
**Vehicle Identification Number 4S4BSAFC1H3****

YESTERDAY MORNING, I STOPPED MY SUBARU IN ORDER TO BACK INTO A PARKING SPACE. THE CAR WAS IN DRIVE AND MY FOOT WAS ON THE BRAKE. WHILE MY FOOT WAS STILL ON THE BRAKE AND I WAS CHANGING GEARS FROM DRIVE TO REVERSE, THE ENGINE STARTED ACCELERATING FULL-THROTTLE. I HAD TO PRESS THE BRAKE PEDAL VERY HARD TO PREVENT THE CAR FROM GOING DOWN THE HILLSIDE BEHIND THE PARKING LOT. I PUT THE CAR BACK IN PARK WITH THE ENGINE REVVING FULL-THROTTLE AND TURNED THE IGNITION OFF. AFTER

CLASS ACTION COMPLAINT

THIS INCIDENT THE CAR OPERATED NORMALLY – UNTIL TODAY. TODAY, MY CAR WAS PARKED IN MY DRIVEWAY IN FRONT OF MY GARAGE. WHEN I STARTED THE CAR EVERYTHING SEEMED FINE – UNTIL, WITH MY FOOT ON THE BRAKE, I ATTEMPTED TO CHANGE GEARS FROM PARK TO DRIVE. AGAIN THE ENGINE IMMEDIATELY AND UNEXPECTEDLY ACCELERATED FULL-THROTTLE. AS I WAS MOVING THE GEAR SHIFTER FROM PARK TO REVERSE TO NEUTRAL TO DRIVE, I AGAIN HAD TO PRESS THE BRAKE PEDAL VERY HARD TO PREVENT THE CAR FROM BACKING INTO MY GARAGE DOOR….

33.     The consumer complaints demonstrate a common fact pattern – a sudden unintended acceleration event that is not initiated by the driver followed by repeated application of the brakes without effective results. These complaints are exemplars of the hundreds lodged with NHTSA and consumer websites. Importantly, they have been lodged across all years and models of Class Vehicles, demonstrating not only the pervasiveness of the Defect but that it has been endemic to Subaru Vehicles for years.

### C.      Subaru's Knowledge of the Defect

34.     Plaintiffs are informed and believe that the Class Vehicles share the same throttle assemblies, CAN bus, software and related electric componentry.

35.     Defendant knew that the Class Vehicles suffered from the Defect that results in SUA events, rendering the vehicles unfit for their intended purpose and unsafe to operate.

36.     Prior to marketing and selling Class Vehicles Defendant and its parent undertook preproduction testing, ostensibly to ensure the Vehicles were free of defects.  Subsequently, Defendant has received or otherwise been made aware of maintenance records, warranty claims, and consumer complaints that put Defendant on further notice that Class Vehicles were suffering from SUA events

1    in material numbers.

2    37.    Despite this information, Defendant have neither offered to recall the

3    Class Vehicles, nor issued a Technical Service Bulletin to address the Defect.

4    38.    Defendant failed to disclose and/or concealed the Defect from

5    Plaintiffs and the other Class Members who, had they known, would not have

6    purchased or leased their vehicles or would have paid substantially less.

7    39.    The existence of the Defect is a material fact that a reasonable

8    consumer would consider when deciding whether to purchase or lease a Class

9    Vehicle. That a vehicle suffers from sporadic sudden unintended acceleration is a

10    material safety concern. Consumers reasonably expect that vehicles are free from

11    defects, especially those that result in a significant safety hazard.

12    40.    As a result of the Defect, Class Members have been deprived of the

13    benefit of their bargain as the value of their vehicles has materially diminished.

14    41.    As a result of their reliance on Defendant' omissions and/or

15    misrepresentations, owners and/or lessees of the Class Vehicles have suffered

16    ascertainable loss of money, property, and/or loss in value of their Class Vehicle.

17    42.    Defendant had exclusive knowledge of material facts unknown to

18    consumers which they actively concealed when they sold vehicles to Plaintiffs

19    and Members of the Class. Based on these circumstances, Defendant was

20    obligated to disclose the existence of the Defect to Plaintiffs and the Class. The

21    Defect presents an obvious safety concern. Had Plaintiffs and Class Members

22    known of this Defect they would not have purchased the vehicles, and certainly

23    not at the prices at which they were purchased.

24    **CLASS ACTION ALLEGATIONS**

25    43.    Plaintiffs seek relief on behalf of themselves and as representatives

26    of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a),

27    (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Class defined as follows:

CLASS ACTION COMPLAINT

> All persons or entities who purchased or leased a
> 2012-2018 Subaru Forester, 2015-2019 Subaru
> Legacy, or 2015-2019 Subaru Outback vehicle in the
> State of California.

44.    Excluded from the Class are Defendant and any of their affiliates, parents or subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

45.    Plaintiffs hereby reserve the right to amend or modify the class after having had an opportunity to conduct discovery.

46.    The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

47.    **Numerosity. Fed. R. Civ. P. Rule 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous that the joinder of all members is impractical.  Upon information and belief, the Defect implicates thousands of Subaru owners and lessees.

48.    **Commonality. Fed. R. Civ. P. Rule 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a.  Whether Class Vehicles suffer from the Defect;

b.  Whether the Defect poses a safety hazard;

c.  Whether Defendant knew about the Defect;

d.  Whether Defendant had a duty to disclose the Defect to Plaintiffs and Members of the Class;

e.  Whether Defendant violated the Unfair Competition Law;

f.  Whether Defendant violated the Consumers Legal Remedies Act;

CLASS ACTION COMPLAINT

g.  Whether Defendant breached their express and implied warranties;

h.  Whether Defendant was unjustly enriched; and

i.  Whether Plaintiff and Class Members are entitled to relief.

49.    **Typicality. Fed. R. Civ. P. Rule 23(a)(3).**  Consistent with Rule 23(a)(3), Plaintiffs' claims are typical of those of other Class Members.  Plaintiffs are owners/lessees of Subaru Class Vehicles that suffer from a common Defect. Plaintiffs' damages and injuries are akin to other Class Members, and Plaintiffs seek relief consistent with the relief sought by the Class.

50.    **Adequacy. Fed. R. Civ. P. Rule 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class they seek to represent; are committed to pursuing this matter against Defendant to obtain relief for the Class; and have no conflicts of interest with the Class. Moreover, Plaintiffs' Counsel are competent and experienced in litigating class actions, including product defect litigation of this kind. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

51.    **Superiority. Fed. R. Civ. P. Rule 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to the individual Plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant' wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation

creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

52.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

53.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

54.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to vehicle identification numbers as well as sales and lease records. Using this information, Class Members can be identified and ascertained for the purpose of providing notice.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty - California Commercial Code section 2313
### (Plaintiff Bare only)

55.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56.    Class Vehicles are sold and leased with a New Vehicle Limited Warranty which provides three-year/36,000 mile warranty coverage for defects in materials or workmanship and benefits subsequent purchasers throughout the duration of the Warranty period.[8] Subaru also offers Extended Warranties that

---

[8] See e.g., https://www.subaru.com/owners/vehicle-warranty/warranties-2016.html

CLASS ACTION COMPLAINT

provide the same comprehensive coverage for additional years and mileage.[9]

57.    These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use.

58.    Subaru is, and was at all relevant times, a merchant and seller of motor vehicles within the meaning of the California Commercial Code ("CCC").

59.    Class Vehicles are, and were at all relevant times, consumer goods within the meaning of the CCC. Cal. Civ. Code section 1791(a).

60.    Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described above, which became a material part of the bargain. Accordingly, Defendant's warranty is an express warranty under California law.

61.    Defendant's Warranties covers any repairs needed to correct defects in material or workmanship that occur under normal use and are reported during the applicable warranty periods.

62.    This promise formed part of the basis of the bargain on which Plaintiff Bare and Class Members relied.

63.    Defendant's failure to acknowledge and remedy the Defect is a breach of the express warranty.

64.    As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles.

65.    Plaintiffs were not required to notify Subaru of the breach of warranty because affording Subaru a reasonable opportunity to cure its breach

---

[9] See e.g., https://www.subaru.com/addedsecurity

CLASS ACTION COMPLAINT

would have been futile. Subaru was also on notice of the Defect from the numerous complaints that were posted on NHTSA, on-line, and that it received directly and/or through its dealerships. Plaintiff Bare took her Subaru to a dealer which failed to fix the Defect.

66.    As a result of Defendant's breach of the express warranty, Plaintiff Bare and Class Members are entitled to legal and equitable relief against Defendant, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty
### (Plaintiff Bare only)

67.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

68.    Subaru is, and was at all relevant times, a merchant and seller of motor vehicles within the meaning of the California Commercial Code and the Song-Beverly Act ("SBA").

69.    Class Vehicles are, and were at all relevant times, consumer goods within the meaning of the CCC and SBA. Cal. Civ. Code section 1791(a). Plaintiff Bare's vehicle was within the warranty period when it failed so she is entitled to the protection of the Song-Beverly Act despite buying it pre-owned.

70.    The Class Vehicles were sold and leased with an implied warranty that they were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

71.    Under the SBA, an implied warranty of merchantability guarantees that consumer goods such as the Class Vehicles: (1) pass without objection in the trade under the contract description, and (2) are fit for the ordinary purposes for which such goods are used. Cal. Civ. Code section 1791.1(a).

72.     Subaru directly sold and marketed Class Vehicles to customers through authorized dealers from whom Plaintiffs and Members of the Class bought or leased their vehicles.

73.     Subaru provided Plaintiff Bare and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.  Any purported disclaimed of implied warranties was not sufficiently conspicuous.

74.     The Defect, which results in SUA events, renders Class Vehicles unfit for ordinary use and far below the basic performance standards of like products.

75.     Contrary to the implied warranty, Class Vehicles were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable and safe transportation.

76.     As a result of Subaru's breach of the applicable implied warranties, Plaintiff Bare and members of the Class suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff Bare and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before the expiration of their useful life.

77.     As a direct and proximate result of Subaru's breach of implied warranty of merchantability, Plaintiff Bare and Class Members have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

78.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

CLASS ACTION COMPLAINT

79.    Subaru has received and retained a benefit from Plaintiffs and the Class and an inequity has resulted.

80.    Subaru has benefitted from selling and leasing Class Vehicles with a known Defect for which Plaintiffs and Class Members have overpaid.

81.    By means of Defendant's wrongful conduct alleged here, Defendant knowingly sold Class Vehicles to Plaintiffs and Class Members in a manner that was unfair, unconscionable, and oppressive. Specifically, Defendant sold a product with a known safety defect.

82.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and Class Members. In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and Class Members.

83.    Because of Defendant' wrongful conduct, Defendant have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

84.    It is inequitable for Defendant to be permitted to retain the benefits they received, from selling Class Vehicles to Plaintiffs and Class Members in an unfair, unconscionable, and oppressive manner. Defendant' retention of such funds under such circumstances makes it inequitable, and constitutes unjust enrichment.

85.    The financial benefits Defendant derived rightfully belong to Plaintiffs and Class Members. Defendant should be compelled to return all wrongful or inequitable proceeds received by them from the sale of such vehicles into a common fund for the benefit of Plaintiffs and the Class.

86.    Plaintiffs and Members of the Class allege in the alternative that they have no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**Violation of The Consumers Legal Remedies Act**
**Cal. Civ. Code section 1770(a) *et seq.***

87.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

88.     The Consumers Legal Remedies Act ("CLRA") makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code section 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.

89.     By failing to disclose the material safety Defect, Defendant has violated the following provisions of Cal. Civ. Code section 1750 *et seq.*:

   a. Cal. Civ. Code section 1770(a)(5): by representing that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

   b. Cal. Civ. Code section 1770(a)(7): by representing that its goods or services are of a particular standard, quality, or grade, if they are of another;

   c. Cal. Civ. Code section 1770(a)(9): by advertising goods and services with the intent not to sell them as advertised;

   d. Cal. Civ. Code section 1770(a)(16): by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

90.     Defendant undertook the above acts or practices in transactions intended to result, or which did result, in the sale of its vehicles to customers for personal, family, or household use.  Plaintiffs and Class Members relied on Defendant's material omission.  Had Plaintiffs and Class Members known of the

CLASS ACTION COMPLAINT

material omission they would not have purchased Class Vehicles or would have paid substantially less.

91.    Defendant's actions in violation of the CLRA injured and harmed the Plaintiffs and the members of the Class, all of whom have been left to drive vehicles with a Defect that results in sudden unintended acceleration and presents a serious safety risk to drivers, passengers and by standards.

92.    As a result, Class Members had to expend money for the repair of their vehicle and/or were left with a vehicle of diminished value due to its defective nature.

93.    Plaintiffs pray for declaratory, equitable and injunctive relief, as well as an award of attorneys' fees and costs, as authorized by the CLRA.  On September 1, 2020, Plaintiffs sent Subaru a demand letter pursuant to the CLRA. If Subaru does not comply with the demand letter within 30 days, Plaintiffs will amend the Complaint to seek damages for the CLRA cause of action.

**FIFTH CAUSE OF ACTION**
**Violation of California Unfair Competition Law**
**Unlawful Business Practice**

94.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

95.    California Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, which includes unlawful business practices.

96.    Defendant engaged in unlawful business practices in that it omitted to disclose the material safety Defect.

97.    Defendant's deceptive practices constitute an unlawful business practice in that the practices were specifically designed to induce Plaintiffs and Class Members to purchase Class Vehicles.  This violated the CLRA and constituted breach of express and implied warranties and unjust enrichment.

98.    To this day, Defendant has engaged and continues to engage in

CLASS ACTION COMPLAINT

unlawful business practices by concealing the defective nature of the Product and have knowingly misrepresented to Class Members that the Product possesses qualities and characteristics it does not have.

99.    As a direct and proximate cause of Defendant's unlawful methods of competition and unlawful acts or practices, Plaintiffs and Class Members have suffered actual damages in that they own Class Vehicles with the Defect.

100.    As a proximate result of its unlawful practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiffs and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Defendant for restitution and/or disgorgement of funds paid to Defendant by Plaintiffs and Class Members to purchase the Class Vehicles.

## SIXTH CAUSE OF ACTION
### Violation of Unfair Competition Law
### Unfair Business Practice

101.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

102.    Defendant engaged in an unfair business practice by failing to disclose the material safety Defect in Class Vehicles.

103.    Defendant's omission offends an established public policy and is unethical, oppressive, unscrupulous or substantially injurious to customers.

104.    Defendant's unfair practices were designed to induce Plaintiffs and Class Members to purchase Class Vehicles that were not as represented.

105.    Defendant's "unfair" practices caused Plaintiffs and the Class Members to suffer substantial injury by purchasing Class Vehicles that were not as represented and suffer from the material safety Defect.  The injury was not

CLASS ACTION COMPLAINT

outweighed by any benefit the Class Vehicles with the Defect may have provided. Plaintiffs and the Class Members could not have avoided the injury because they reasonably relied on Defendant's omission.

106.  Defendant's unfair practices have caused actual damages to Plaintiffs and the Class Members because they own Class Vehicles with the material safety Defect.  The reasons, justifications and motives of Defendant appear only to be financial gain.

107.  To this day, Defendant has failed to disclose the material safety Defect.

108.  As a direct and proximate cause of Defendant's unfair methods of competition and unfair, deceptive or unlawful acts or practices, Plaintiffs and Class Members have suffered actual damages in that they own Class Vehicles with the material safety Defect.

109.  As a proximate result of its unfair practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiffs and Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for restitution and/or disgorgement of funds paid to Defendant by Plaintiffs and Class Members to purchase the Class Vehicles.

## SEVENTH CAUSE OF ACTION
### Violation of Unfair Competition Law
### Fraudulent Business Practice

110.  Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

111.  Defendant engaged in a fraudulent business practice by omitting to disclose the material safety Defect.

CLASS ACTION COMPLAINT

112.   Defendant's "fraudulent" practices were designed to induce Plaintiffs and Class Members to purchase Class Vehicles.

113.   Defendant's "fraudulent" practices caused Plaintiffs and the Class Members to suffer substantial injury by purchasing Class Vehicles with the material safety Defect.

114.   As a direct and proximate cause of Defendant's fraudulent practices, Plaintiffs and Class Members have suffered actual damages in that they purchased Class Vehicles with the material safety Defect.

115.   As a proximate result of its unfair practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiffs and Class Members pursuant to section 17203 and 17204 of the California Business & Professions Code.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Defendant for restitution and/or disgorgement of funds paid to Defendant by Plaintiffs and Class Members to purchase the Class Vehicles.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request the following relief:

a.  For an Order certifying the Class as defined above, and appointing Plaintiffs and their Counsel to represent the Class;

b.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of here;

c.  For an award of damages, including actual, nominal, and consequential damages, including interest, as allowed by law in an amount to be determined (Plaintiffs do not yet seek damages under the CLRA but will amend to do so if Subaru does not wholly remedy the breach);

CLASS ACTION COMPLAINT

d.  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

e.  For prejudgment interest on all amounts awarded; and

f.  Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to all issues so triable.

Respectfully submitted,

Dated: September 4, 2020                    By:   s/ Gayle M. Blatt
                                                  Gayle M. Blatt

Gayle M. Blatt
CASEY GERRY SCHENK
FRANCAVILLA BLATT &
PENFIELD, LLP
110 Laurel Street
San Diego, CA 92101-1486
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Michael F. Ram, SBN 104805
mram@forthepeople.com
Marie N. Appel, SBN 187483
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Jean Sutton Martin
(*pro hac vice* pending)
jeanmartin@forthepeople.com
John A. Yanchunis
(*pro hac vice* pending)
jyanchunis@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th floor
Tampa, FL 33602

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Telephone: (813) 275-5272
Facsimile: (813) 275-9295

John G. Emerson
(*pro hac vice* pending)
jemerson@emersonfirm.com
EMERSON FIRM, PLLC
2500 Wilcrest Drive
Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659

CLASS ACTION COMPLAINT